REPUBLIC OF HAWAII *v.* LI SHEE alias LI KIAU (w).

APPEAL FROM DISTRICT COURT OF HONOLULU.

SUBMITTED DECEMBER 18, 1899.     DECIDED MARCH 6, 1900.

FREAR AND WHITING, J.J., AND CIRCUIT JUDGE PERRY IN PLACE OF JUDD, C.J., ABSENT.

In a prosecution for polygamy, the first marriage, if any, being one by proxy in China where the defendant was, the other party being in these islands, held, assuming that marriage by proxy is lawful in China, and that the defendant so far as she was concerned complied with the Chinese law and that such a marriage in China would be held valid here, still there was no proof that the proxy was given or that the alleged husband consented.

OPINION OF THE COURT BY FREAR, J.

The defendant was tried and convicted in the District Court of Honolulu on a charge of polygamy and appealed to this court on a number of points of law, several of which, variously worded, are in substance that the evidence was insufficient to sustain the conviction.

The only question raised is whether the alleged first marriage

was proved. If such marriage took place at all, it took place in China between the defendant, who was then in China, and one Chan Sam, who was then in these islands. Considerable testimony was introduced as to the ceremonies required in China for a marriage of a virgin, a widow and a concubine respectively and as to whether such marriages could be performed by proxy in the absence of one of the parties and whether such a marriage by proxy actually took place in the present case.

While the evidence is not very satisfactory it is perhaps sufficient to warrant a finding that marriage by proxy may be contracted in China (the proxy being, at least sometimes, a rooster), and that the defendant went through some ceremony there and thought she thereupon became Chan Sam's wife. She appears to have admitted on several occasions after her arrival here and after her alleged second marriage that she was married to Chan Sam. All this might be sufficient proof that the alleged first marriage had taken place as required by Chinese laws or customs, if Chan Sam had been present.

The general rule is that marriages legal where entered into are legal everywhere unless odious by the common consent of civilized nations. See Civ. L. Sec. 1872. The exceptions usually instanced are polygamous and incestuous marriages. To these may be added marriages where the requisite element of consent is lacking, as, for instance, if one of the parties is insane or is forced to go through the ceremony and there is no cohabitation afterwards. Now, marriage by proxy is contrary to our accustomed notions, but whether it is so contrary to the common sentiment of civilized nations that it should be held void, we need not undertake to decide. It is said that such marriages have taken place at times in history, generally between members of royal families of different countries (14 Am. & Eng. Enc. Law 511, note 13) and that marriages may be effected by letter (I Bish. M. & D. Sec. 231). Assuming that marriage by proxy may take place lawfully in China, it would still be necessary to prove that the proxy was given. It takes two to marry. The evidence in this case may be sufficient to show that the defendant did everything that she

thought was necessary to effect marriage and that she thought that she was married. But Chan Sam's part seems not to have received sufficient attention. Apparently he requested friends or relatives in China to find him a wife or concubine and also sent the money required to pay her passage from China to Honolulu. But whether he authorized a marriage in China by proxy or expected the marriage status to be created after her arrival here, or whether he expected a wife or a concubine, the evidence does not show. It is doubtful from the testimony whether he felt bound when she arrived, and there is testimony tending to show that at most he expected her to be only a concubine. Apparently, her being given to understand that she was to be only a concubine was the reason for her declining to go to him and for her marrying another after her arrival here. The parties never cohabited. If he had been present at the ceremony in China there would doubtless be a strong presumption that he consented. But in his absence thousands of miles away his consent cannot in a criminal prosecution be inferred from the mere fact that she went through the ceremony. If marriage by proxy is legal in China, and if such a marriage there would be legal here, still there must be proof that the requisite authority was given. Without mutual consent there can be no marriage. It is generally said that the consent must be *per verba de praesenti* or *per verba de futuro cum copula.* Assuming that the contract out of which the marriage status arises may, like other contracts, be entered into between parties widely separated, the assent and offer of one communicated to the other being deemed to continue until assent and acceptance by the other, still there is no proof in this case of consent on the part of Chan Sam either *per verba de pracsenti* or *de futuro cum copula.* Another question that we need not decide is whether a marriage by proxy if valid in China would be deemed valid here where one of the parties was at the time (even if mutual consent were shown and aside from the question of public policy) on the ground that the laws, customs or tribunals of one country cannot confer the marriage status upon a

person domiciled in another country.   See 1 Bish. M. & D. Sec.
232.

The judgment of the District Court is reversed and the defendant is discharged.

*Deputy Attorney-General E. P. Dole* for the prosecution.

*T. McCants Stewart* and *F. J. Berry* for the defendant.